## J. J. MELICK, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7623.   Promulgated February 7, 1927.

The stock in a bank owned by the petitioner was worthless at the end of 1921 and the cost thereof was a proper deduction from gross income as a loss sustained in that year.

*Geo. E. H. Goodner, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

The Commissioner determined a deficiency in income tax of $1,989.28 for the calendar year 1921. The issue involved is whether the petitioner is entitled to a deduction of the cost of 200 shares of the capital stock of the Atlas Bank of Neligh, Nebraska, which he alleges was worthless at the end of the calendar year 1921. The Commissioner refused to allow any deduction on this account.

For the past fifteen years petitioner has been a resident of Omaha, Nebr. For about ten years prior to the taxable year he was a stockholder and a director of the Atlas Bank of Neligh, Nebraska. In 1900 the outstanding capital stock of the Atlas Bank consisted of 150 shares of the par value of $100 each. In that year petitioner purchased 37½ shares for $3,750 and since that date he has at all times owned one-fourth of the outstanding capital stock. Between 1900 and June, 1908, petitioner received a total of 37½ shares as stock dividends. On the last mentioned date the corporation issued 200 shares at par, of which number petitioner purchased 50 shares at $100 per share. On March 1, 1913, the outstanding capital stock of the bank was of the par value of $50,000, of which petitioner owned 125 shares of the par value of $12,500. The cost of this stock to him was $8,750. The fair market value of the shares owned by him on March 1, 1913, was $100 a share. On January 18, 1918, petitioner received 62½ shares as a stock dividend and purchased 12½ shares at par, so that in 1918 he was the owner of 200 shares of the par value of $20,000 which had cost him a total of $10,000. On January 17, 1919, petitioner paid an assessment of $7,500 on his stock levied by the stockholders and directors for the purpose of erecting a new bank building, resulting in a total cost to him of $17,500 for the 200 shares of stock which he owned throughout the year 1921.

During 1921 there were four stockholders of the bank, three of whom were officers and directors. During that year the bank had outstanding a large amount of loans, principally to farmers, which loans were secured by mortgages on lands, crops, and personal property. In 1921 there was such a decline in the market for farm lands, equipment, and farm products that the collateral held by the bank on loans made was of little value and the debtors found themselves unable to pay off the loans on account of their inability to obtain the expected price for their crops, the price of corn having fallen from $1.80 to 80 cents a bushel. During the year large amounts of loans became due and were not paid. Mortgages were foreclosed and little or nothing was recovered in a great many instances. The stockholders and directors of the bank were fully aware of the situation and realized in the latter part of October and early in November, 1921, that the bank was insolvent. Various banks in Omaha held practically all of the collateral of the Atlas Bank and it was indebted to these banks in large amounts for which the petitioner and other stockholders were guarantors. The stockholders and directors held frequent meetings in November and December, 1921, and discussed the situation among themselves. They made an exam-

ination of the notes and collateral and determined that at least $310,000 thereof was worthless. At that time the capital of the bank amounted to $80,000 and the records showed a bank surplus of only $12,000. The stockholders realized that they would be required to pay the amount of their liability as stockholders. Early in November, 1921, certain drafts were drawn on the Atlas Bank by the Omaha banks which the Atlas Bank was unable to pay. Thereupon . a conference was held between the officers of the Omaha banks and the Department of Trade and Commerce of Nebraska (Banking Department), in which conference the Omaha banks and the Department of Trade and Commerce selected a man to take charge of the Atlas Bank. The bank was not closed but this representative was placed in complete charge of it on November 5, 1921. He found the situation to be as above outlined. He devoted himself principally to the investigation and collection of outstanding loans. On December 5, 1921, an examiner of the State Department of Trade and Commerce made an examination of the Atlas Bank, reporting to the Department that the bank was carrying on its books as assets $200,000 of worthless notes and unless these notes were removed from the assets by the substitution of cash, or other bankable paper, the Atlas Bank was hopelessly insolvent.

Conditions grew steadily worse after the date of this report and the amount of worthless notes increased. The Atlas Bank was hopelessly insolvent at the end of the calendar year 1921 and its stock was worthless. This fact was known to the officers and stockholders. The representative of the Department of Trade and Commerce who was in charge of the bank notified the petitioner and other stockholders in December, 1921, that an assessment upon their stock would have to be paid. The directors and stockholders held meetings about twice a week during December, 1921. In February an assessment of 75 per cent was paid by the stockholders upon their stock. Each of the four stockholders paid or gave their secured note for $15,000. The petitioner paid his assessment in cash. The vice president, who was one of the stockholders and who had been in active charge of the bank, paid in to the bank his note for $36,000 in addition to his assessment. The cashier, who was not a stockholder, paid in his note for $22,000. The assistant cashier, who was not a stockholder, paid in his note for $2,000. This cash and these notes were substituted for $118,000 of the worthless notes. But this did not render the bank solvent.

The representative of the Department of Trade and Commerce remained in charge of the bank and kept it open. In May, 1923, the bank was formally taken over by the Department of Trade and Commerce of the State of Nebraska and placed in the hands of a

receiver. Seven hundred and ninety-eight thousand dollars of the guaranty fund of the State of Nebraska was used to pay depositors of the Atlas Bank. The assets of the bank were of a value not in excess of $52,000. Certain of the officers and stockholders of the Atlas Bank, including petitioner, had personally paid a considerable portion of the indebtedness of the Atlas Bank to other banks, which indebtedness they had guaranteed.

Petitioner did not personally make out his 1921 income-tax return but employed some one else to prepare it for him. Petitioner was not familiar with the income-tax law and, when he explained the Atlas Bank matter to the person whom he had employed to prepare his return, he was advised to claim a deduction of $15,000, assessment upon his stock, and this deduction was shown in the return with the explanation that it was " a loss on account of money paid to the Atlas Bank of Neligh, Nebraska, at the instance of the stockholders and the State Banking Board, to keep the bank from closing its doors on account of depleted capital through loss of assets." Subsequently petitioner claimed before the Commissioner that, instead of the $15,000 deduction, he was entitled to a deduction of the cost of his stock which became worthless in 1921. The Commissioner disallowed the deduction of $15,000, refused to allow any loss on account of the bank stock, made certain other minor adjustments not in controversy here, and determined the deficiency here involved.

### OPINION.

LITTLETON : We think the petitioner has shown that he sustained a loss in 1921 of the cost of the stock owned by him in the Atlas Bank. He and the president and the cashier of the bank testified in detail concerning the affairs and condition of the Atlas Bank during 1921; the secretary of the Department of Trade and Commerce of Nebraska explained that Department's relation with the bank. Petitioner and other officers of the bank who were thoroughly familiar with its condition and assets testified positively that they knew the bank was hopelessly insolvent in November and December, 1921, and that they had not the faintest hope that it could be saved. The control and management of the bank was taken from them in November, 1921.

As early as November of that year the bank was unable to meet its drafts. Debtors of the bank were unable to pay their loans already due, and collaterals which the bank held were practically if not entirely worthless. They determined that at least $310,000 of such loans were worthless. They knew that other loans soon to become due would likewise be worthless on account of agricultural conditions.

Petitioner had an investment of $17,500 in the 200 shares of stock of the Atlas Bank of Neligh, Nebraska, and the Board is convinced from a consideration of all the evidence that this investment was a loss in 1921. He was therefore entitled to deduct that amount from gross income for that year as a loss sustained under the provisions of section 214 of the Revenue Act of 1921.

*Judgment will be entered on 15 days' notice, under Rule 50.*